## Louisiana Oil Refining Corporation v. Justice.

(Decided May 18, 1928.)

### Appeal from Warren Circuit Court.

Mines and Minerals.—Telegrams from prospective purchaser and agent containing purchaser's offer to buy oil lease, and return telegram of corporation operating lease, accepting offer provided it was in cash, held to constitute completed contract in action by such prospective purchaser for damages for corporation's subsequent sale of lease to third party, notwithstanding telegram of acceptance used words, "Willing accept offer . . . provided this cash offer," where money was wired corporation before prospective purchaser received attempted cancellation of his offer.

FINN & SIMS and ROUSE & PRICE for appellant.

RODES & HARLIN for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The Louisiana Oil Refining Corporation, having its principal office in Shreveport, La., owned and operated

an oil lease near Richpond in Warren county, Ky., and J. F. Phelps was employed by the company to pump the lease and look after the upkeep of it. The company owned no other lease in that territory, and, the lease in question being a losing proposition, the company decided to dispose of it and instructed Phelps if he learned of any one interested in its purchase to have such person communicate with the company at Shreveport.

The appellee, J. A. Justice, a resident of Bowling Green, Ky., wrote to the appellant concerning the lease, and on September 8, 1926, the company, in reply to Justice's letter, informed him that it had not determined what would be done regarding the lease, but his letter would be held for further reference and the matter would be taken up with him in a very short time. On September 27, the company wrote to Justice offering to take $2,500 for the lease. On September 29, Justice, accompanied by Phelps, inspected the lease and pumping equipment, and on the night of the same day each sent a telegram to the company at Shreveport, Phelps' telegram being as follows:

> "Did not receive offer of $2,500 at any time but had offer of $1,200 by Mr. J. A. Justice today if accepted at once. This is a good offer for condition of equipment. Wire reply."

The telegram sent by Justice was as follows:

> "Looked over your Richpond equipment today. Will wire you $1,200 tomorrow if accepted."

Phelps' telegram was received by the company at Shreveport at 9 a. m. on September 30, and Justice's telegram was received by the company at 11:30 a. m. on September 30. At 9:48 a. m. on September 30, and after receiving Phelps' telegram but before receiving the one sent by Justice, the company sent the following telegram to Phelps:

> "Your telegram 29th received. We willing accept offer Mr. J. A. Justice twelve hundred dollars provided this cash offer. Please wire us regarding this point."

This telegram was delivered to Phelps at 10:45 a. m. on September 30, and he immediately communicated its contents to Justice, who at once arranged to secure

the money, and at 1:30 p. m. on the same day he wired the company $1,200. After he had sent this telegram, but while he was in the telegraph office a telegram from the company was delivered to him in which it stated it had received a better offer for the property and could not accept his offer of $1,200.

It seems that W. Roy Hogan had wired the company from Bowling Green at 10:20 a. m. on September 30, offering $2,250 for the lease and equipment, and that this telegram was delivered to the company at Shreveport at 11:10 a. m. on September 30, and after they had wired Phelps, "Willing accept offer Mr. J. A. Justice twelve hundred dollars providing this cash offer." The lease and equipment were sold to Hogan for $2,250, and Justice brought this action suing out an order of delivery for the equipment. The company gave bond and delivered the equipment to Hogan.

It is conceded that the amount of damages to which Justice is entitled, if any, is $1,050. On a trial of the case the court peremptorily instructed the jury to find for Justice in that sum, and to reverse that judgment this appeal is prosecuted.

The facts are undisputed, and the sole question for determination is whether or not the telegrams passing between the company on the one hand and Phelps and Justice on the other constituted a contract for the sale of the lease and equipment for $1,200. It is insisted for appellant that the telegram sent by it on September 30 to Phelps expressed only an inclination or disposition to sell if the offer made was cash, but amounted to neither a conditional nor unconditional acceptance of the offer, but that the only purpose of the telegram was to obtain information as to whether or not the offer was cash, and that the agent, Phelps, to whom the telegram was sent, was only authorized to secure and forward the information requested. We are unwilling to give to the words, "willing" and "accept," as used in the telegram, the technically and excessively nice definitions given thereto by counsel for appellant. In view of the communications that had passed between the company and Justice by letter and wire, it is plainly apparent that the company intended to accept the offer of $1,200 provided the offer was cash, and Justice was warranted in so construing the telegram. At the most it amounted to a counter offer

and, Justice having wired the money to the company before receiving the attempted cancellation of the offer, the contract was closed.

Judgment affirmed.